**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**

| | | |
|---|---|---|
| EDWARD KENDALL,<br><br>Plaintiff,<br><br>v.<br><br>PNC BANK, N.A.,<br><br>Defendants. | ) | Civil Division<br><br>No.: |

# COMPLAINT

## INTRODUCTION

1. On December 7, 2007, Plaintiff Edward Kendall formed a law firm, Strickland & Kendall, LLC, with Michael Strickland. Kendall and Strickland split ownership of the firm evenly (50/50) between them, and they were the firm's only partners.

2. Last year, Plaintiff Kendall learned what Defendant PNC Bank, N.A., and its predecessor in interest, BBVA USA (together with PNC Bank, N.A., the "Banks"), could long see—Strickland had engaged in multiple acts, including the forgery of Plaintiff Kendall's signature on Bank documents and theft of Plaintiff Kendall's identity in opening Bank accounts, designed to conceal and divert Plaintiff Kendall's hard-earned monies, all without Plaintiff Kendall's knowledge or consent.

3. In the course of this fraudulent scheme, Strickland stole from Plaintiff Kendall through duplicate, shadow accounts that Strickland opened at BBVA USA and PNC Bank. Strickland robbed millions of dollars from Plaintiff Kendall through those accounts.

4. While Strickland kept these actions hidden from Plaintiff Kendall, the Banks had

full view of the secret accounts and their fraudulent nature: the Banks were alerted to Strickland's fraudulent scheme through irregularities in the account opening documents submitted by Strickland and through monitoring activity into and out of the accounts. Those irregularities include: (1) opening accounts and/or recharacterizing ownership of accounts in Plaintiff Kendall's name without Plaintiff Kendall present; (2) opening accounts and/or recharacterizing ownership of accounts with documents clearly bearing Plaintiff Kendall's forged signature; (3) opening accounts and/or recharacterizing ownership of accounts in the name of or with EIN's from law firms that no longer exist or never existed; (4) effecting bi-directional transfers into and out of Strickland & Kendall, LLC's accounts at the Banks, including its Interest on Lawyers' Trust Account ("IOLTA") account, in conflict with Alabama State Bar requirements; (5) effecting transfers from Strickland & Kendall, LLC's accounts at the Banks to accounts that Strickland secretly opened and separately owned under the names of fake law firms and other entities; (6) depositing checks made payable to Strickland & Kendall, LLC and/or the firm's clients into accounts that Strickland secretly opened and separately owned under the names of fake law firms and other entities; and (7) allowing Strickland to open a credit card account in Plaintiff Kendall's name without Plaintiff's knowledge or consent.

5. The Banks knew from the foregoing discrepancies that Strickland was diverting funds belonging to Plaintiff Kendall. To be sure, had the Banks adhered to banking regulations and industry standards in place at the time Strickland opened the shadow accounts—including "Know Your Customer" ("KYC") and "Customer Identification Procedures" ("CIP")—the Banks would have identified, and could have stopped, Strickland's theft from Plaintiff Kendall. The Banks did not, and Plaintiff Kendall lost millions of dollars as a result.

6. With this suit, Plaintiff Kendall seeks to redress the harm caused by the Banks'

negligence and wantonness and to hold Defendant PNC Bank to account.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds $75,000.00 and the parties are citizens of different States.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to Plaintiff Kendall's claims occurred in this District.

## PARTIES

9. Plaintiff Edward Kendall is a resident of the State of Alabama.

10. Defendant PNC Bank is a national bank charted in Wilmington, Delaware, and headquartered in Pittsburgh, Pennsylvania. In August 2021, PNC Financial Services Group, PNC Bank's parent company, acquired BBVA USA Bancshares, Inc., including its U.S. banking subsidiary BBVA USA. Upon close of the transaction, BBVA USA was merged into PNC Bank.

## FACTUAL ALLEGATIONS

### A. The Formation and Structure of Strickland & Kendall, LLC

11. Plaintiff Kendall is an Alabama barred attorney.

12. On December 7, 2007, Plaintiff Kendall and Michael Strickland formed Strickland & Kendall, LLC, under the laws of the State of Alabama. The firm's articles of organization designated Plaintiff Kendall and Michael Strickland as the firm's only members, with each holding a 50% ownership interest in the firm. By agreement of the members, Strickland and his wife, Emily, prepared the firm's financial statements, kept its books, and corresponded with its CPA.

13. Strickland & Kendall, LLC operated a plaintiff-side litigation practice with a focus on personal injury, wrongful death, and complex tort cases. Over time, Strickland & Kendall, LLC developed a portfolio of high-dollar-value contingency fee cases, and the law partners generated

large fees through the successful resolution of those cases. Plaintiff Kendall was entitled to those fees pursuant to the firm's operating agreement.

**B. Plaintiff Kendall's Discovery of Strickland's Fraud**

14. In early 2025, Plaintiff Kendall obtained renewal materials from the lender managing Strickland & Kendall LLC's line of credit. The materials included a personal financial statement submitted by Strickland and his wife, Emily, who has kept the books for Strickland & Kendall, LLC since the firm's inception. The Stricklands' reported holdings approximated $11 million, comprised primarily of real property and more than $4.1 million in bank deposits. The Stricklands reported $0 in debt.

15. Plaintiff Kendall had no knowledge of the Stricklands' reported multi-million-dollar net worth. Income of that degree was not supported by the revenue and cash flows recorded by Emily Strickland on the firm's books, and Plaintiff Kendall began to inquire into the sources of the Stricklands' reported wealth.

16. Plaintiff Kendall discovered that the Stricklands held more than $4 million in bank deposits across three accounts at Defendant PNC Bank:

- $1,005,000 in PNC Account No. [redacted]8441, opened in the name of "Michael and Emily Strickland";
- $2,000,000 in PNC Account No. [redacted]3212; and
- $1,100,000 in PNC Account No. [redacted]3749, opened in the name of "Michael Strickland Law Group".

PNC Bank has since advised Plaintiff Kendall that Strickland has closed many of these accounts

17. Upon information and belief, there are no organizational documents for "Michael Strickland Law Group," and "Michael Strickland Law Group" was not a legally formed business entity in existence at the time under the laws of any jurisdiction.

18. Because these accounts were not opened on behalf of Strickland & Kendall, LLC, and because Strickland controlled access to their records, Plaintiff Kendall had no access to account statements or other documentation for these accounts, and Strickland kept the records concealed from Plaintiff Kendall.

19. Soon thereafter, Plaintiff Kendall discovered that Strickland unilaterally changed the EIN for Strickland & Kendall LLC's operating account in 2016 without Plaintiff Kendall's consent or knowledge.

20. Plaintiff Kendall immediately informed the Federal Bureau of Investigation and Internal Revenue Service of Strickland's misconduct and sued for judicial dissolution of Strickland & Kendall, LLC in Alabama state court. The state court ordered dissolution of the firm on September 12, 2025.

21. Through court-ordered discovery in connection with the dissolution, Plaintiff Kendall uncovered multiple operating and IOLTA trust accounts that Strickland secretly opened at the Banks, including:

- A BBVA USA Account No. [redacted]4568 (later became PNC Bank Account No. 3172064071), an IOLTA Account in the name of "Michael Strickland Law Group";

- A BBVA USA Account No. [redacted]4324 (later became PNC Bank Account No. 3172063749), an operating account, in the name of "Michael Strickland Law Group";

- A BBVA USA Account No. [redacted]9153 in the name Strickland, Chancellor & Kendall, a defunct predecessor firm to Strickland & Kendall, LLC;[1]

- A Max Credit Union Account No.[redacted]-0010, an operating account in the name of "Michael Strickland d/b/a Strickland & Kendall";

---

[1] Plaintiff Kendall has not yet identified whether this account was an operation or IOLTA account and whether it later became a PNC Bank account.

- A Max Credit Union Account No. [redacted]-0011, an IOLTA account in the name of "Michael Strickland d/b/a Strickland & Kendall"; and
- A Max Credit Union Account No. [redacted]0-001, a savings account in the name of "Michael Strickland d/b/a Strickland & Kendall."

22. Upon information and belief, there are no organizational documents for either "Michael Strickland Law Group" or "Michael Strickland d/b/a Strickland and Kendall," and neither were legally formed business entities in existence at the time these accounts were opened under the laws of any jurisdiction.

23. Because these accounts were not opened on behalf of Strickland & Kendall, LLC, and because Strickland controlled access to their records, Plaintiff Kendall had never seen any documentation for these accounts, and Strickland kept the records concealed from Plaintiff Kendall.

24. Strickland used these shadow accounts to secretly siphon millions of dollars belonging to Plaintiff Kendall into Strickland's own pocket and into the pockets of his immediate family members.

**C. The Banks' Negligence in Opening Strickland's Shadow Accounts**

25. Strickland routed this fraudulent scheme primarily through the Banks, and the Banks' failure to adhere to industry standards and regulatory requirements in opening and servicing those accounts allowed Strickland to steal millions of dollars from Plaintiff Kendall. The Banks' participation in Strickland's fraudulent scheme dates back to the formation of Strickland & Kendall, LLC in 2007.

26. Plaintiff Kendall and Strickland obtained a tax-ID number for the firm, EIN 24-47522350, and Strickland filed the firm's tax returns under that EIN. Plaintiff Kendall and Strickland used the same EIN to open the operating account and the IOLTA account at BBVA

USA, which were later converted to PNC Bank accounts following the Banks' merger in 2021. The account numbers were as follows:

- BBVA USA Account No. [redacted]7640 (later became PNC Bank Account No. [redacted]8503), an operating account in the name of "Strickland & Kendall, LLC";
- BBVA USA Account No. [redacted]8612 (later became PNC Bank Account No. [redacted]8554), an IOLTA Account in the name of "Strickland & Kendall, LLC."[2]

27. In opening these accounts, Strickland and Plaintiff Kendall submitted organizational documents for the firm, Strickland & Kendall, LLC, showing their equal ownership of 50% each, as well as Strickland & Kendall, LLC's EIN 24-47522350.

**i. Strickland's Takeover of the Firm's Operating Accounts**

28. In April 2016, Strickland forged Plaintiff Kendall's signature on BBVA USA documents to unilaterally alter the firm's classification from a 50/50 partnership to a "sole proprietorship," substitute in the EIN number for a defunct law firm, and change the signatures cards for the Strickland & Kendall, LLC operating account (BBVA USA Account No. [redacted]7640, which would later become PNC Bank Account No. [redacted]8503).

29. The Banks allowed Strickland to make these changes without Plaintiff Kendall present, and Strickland kept the reclassification of the account, its EIN, and its signatures hidden from Plaintiff Kendall. Plaintiff Kendall did not learn of the changes to this account until after the judicial dissolution of the firm in the fall of 2025.

30. Though Strickland listed the firm as a "sole proprietor" on the form reclassifying the account, the firm's name—which Strickland entered on the form as "Strickland & Kendall LLC"—indicated that the sole proprietor election was false, and this classification directly

[2] Strickland and Kendall had previously opened an IOLTA account at Valley National Bank (Account No. IOLTA [redacted]3582) in the name of "Strickland & Kendall, LLC." Kendall believed the account had been closed when Strickland and Kendall moved the firm's accounts to BBVA.

contradicted the articles of organization that the Banks have on file from the original opening of the account.


STRICKLAND & KENDALL LLC
Account Title
[redacted]7640
Account Number
14-1848672
Primary Taxpayer ID
Sole Proprietor
Ownership Type

31. In converting the "Ownership Type" of the account, Strickland listed as the firm's EIN 14-1848672. That was not the EIN belonging to Strickland & Kendall, LLC, but instead belonged to a predecessor firm, Strickland, Chancellor & Kendall, LLC, which ceased operations in 2006, as evidenced by records accessible through the Alabama State Bar and the Alabama Secretary of State.

32. While Strickland surreptitiously revised the EIN for the firm's operating account at BBVA USA, the firm's tax filings remained the same. All state and federal tax returns for Strickland & Kendall, LLC continued to be filed under EIN 26-47522350, the original EIN listed on the operating account (BBVA USA Account No. [redacted]7640, which would later become PNC Bank Account No. [redacted]8503), and both Plaintiff Kendall and Strickland continued to be listed as the firm's equal owners. Strickland's characterization of the account as one owned by a "Sole Proprietor" was also contradicted by records accessible through the Alabama State Bar and the Alabama Secretary of State, which reflected that Strickland & Kendall, LLC remained an active limited liability company with two equal members.

33. Additionally, Strickland submitted signatures authorizing the reclassification purportedly from the firm's two members. A comparison of those signatures to the signatures on

the firm's articles of organization, which BBVA USA had on file, indicates that Plaintiff Kendall's signatures to the reclassification documents were forged.

**The forged signature:**



Under penalties of perjury, I certify that:
☐ 1. The Internal Revenue Service has not advised me that I am currently subject to backup withholding unless I check this block.
☐ 2. I am a U.S. person (including a U.S. resident alien) unless I check this block.
☒ 3. The number shown above is the correct Taxpayer Identification Number for tax reporting purposes; OR
☐ A Taxpayer Identification Number has been applied for (If number is not provided within 60 days, the account will be closed. If a withdrawal of $500 or more is made prior to the Bank's receipt of this number, the Bank will withhold 28% from interest payments.); OR
☐ All owners of this account are nonresident aliens (or this is a foreign entity) who have (has) provided the appropriate completed Form W-8; OR
☐ Based on Internal Revenue Service regulations, I am a U.S. exempt payee and not subject to Backup Withholding.

Authorized Representative's Signatures

**The signature from the organizational documents on file:**



We, the undersigned, have subscribed our names to this instrument on this the ___ day of ___, 200_.

MICHAEL G. STRICKLAND, ESQ.

By: ______________________
Michael G. Strickland - Member

EDWARD P. KENDALL, ESQ.

By: ______________________
Edward P. Kendall - Member

34. Though the Bank should have obtained these signatures from each of Strickland and Plaintiff Kendall *in person*, as required by banking regulations and industry practice, Strickland submitted these signatures by fax.

35. These changes to the operating account (BBVA USA Account No. [redacted]7640, which would later become PNC Bank Account No. [redacted]8503) made it such that Strickland

could transfer money in and out of the accounts he shared with Plaintiff Kendall without Plaintiff Kendall's knowledge or consent. Coupled with the shadow accounts that he opened in his own name and the names of fictitious law firms, Strickland commandeered the operating account to create a dual identity—one seemingly legitimate identity for tax filings and other regulatory purposes, and another shadow identity used to siphon funds from Plaintiff Kendall. Though the Banks had visibility of this dual structure, Strickland kept the shadow accounts hidden from Plaintiff Kendall until after the court-ordered dissolution of Strickland & Kendall, LLC in September 2025.

**ii. Strickland's Opening of Unauthorized Shadow Trust Accounts**

36. Late last year, Plaintiff Kendall learned that Strickland opened an unauthorized IOLTA trust account in the name of "Michael Strickland Law Group" at either BBVA USA or PNC Bank, following the merger of the banks.

37. The unauthorized IOLTA account was assigned Account No. [redacted]4071.[3] Upon information and belief, Strickland operated the unauthorized IOLTA account as a shadow trust account in parallel to the IOLTA trust account opened by Strickland and Plaintiff Kendall, which the Banks also serviced. The unauthorized IOLTA account (Account No. [redacted]6071) was never disclosed to Plaintiff Kendall.

**iii. Strickland's Diversion of Funds to His Shadow Accounts**

38. Unbeknown to Plaintiff Kendall, Strickland routinely deposited checks made out to "Strickland & Kendall LLC"—including from the firm's IOLTA account—into accounts belonging to the other entities that Strickland secretly owned. Though Strickland endorsed the

[3] Because the account number for this unauthorized IOLTA trust account is close in number to the account number for the operating account opened by Strickland in the name of "Michael Strickland Law Partners," it appears that the accounts were opened by Strickland close in time.

checks with reference to "Strickland & Kendall 6781044324," Plaintiff Kendall learned in late December 2025 that this account, BBVA USA Account No. [redacted]4324 (which later became PNC Bank Account No. [redacted]3749), was, in fact, an operating account opened in the name of "Michael Strickland Law Group," not "Strickland & Kendall."

39. The endorsement and deposit of checks made out to one entity into an account owned by a different entity is not in compliance with the proper handling of funds. Examples of these checks include:


STRICKLAND & KENDALL, L.L.C.
ATTORNEYS AT LAW
TRUST ACCOUNT
2740 ZELDA RD, STE 500 334-269-3230
MONTGOMERY, AL 36106

BBVA COMPASS
COMPASS BANK
MONTGOMERY, ALABAMA

1699

02/11/2021

PAY TO THE ORDER OF STRICKLAND & KENDALL, LLC $*7,898.34

Seven Thousand Eight Hundred Ninety-Eight and 34/100*********** DOLLARS

MEMO Montgomery, Franklin, Savage, et al vs Alfa Insurance

AUTHORIZED SIGNATURE

[redacted]0307

[redacted]0307

Strickland Kendall
6781044324


STRICKLAND & KENDALL, L.L.C.
ATTORNEYS AT LAW
TRUST ACCOUNT
2740 ZELDA RD, STE 500 334-269-3230
MONTGOMERY, AL 36106

BBVA COMPASS
COMPASS BANK
MONTGOMERY, ALABAMA

1718

04/02/2021

PAY TO THE ORDER OF STRICKLAND & KENDALL, LLC $5,205.00

Five Thousand Two Hundred Five and 00/100********** DOLLARS

MEMO Kevin Flowers vs Booth Powell

AUTHORIZED SIGNATURE

[redacted]

[redacted]0307

[redacted]0307

Strickland & Kendall [redacted] 4324
For Deposit

40. In this way, Strickland diverted at least several million in funds comprised of fees belonging to Plaintiff Kendall to accounts separately owned and secretly operated by Strickland, unbeknown to Plaintiff Kendall.

41. Strickland also stole Plaintiff Kendall's hard-earned attorneys' fees by depositing checks payable to the firm into the unauthorized IOLTA account opened for "Michael Strickland Law Group" (BBVA USA Account No. [redacted]4568/PNC Bank Account No. [redacted]4071), rather than depositing the proceeds into the firm's authorized IOLTA account.

42. For example, in February 2021, BBVA Bank accepted the deposit of a $47,500 check into the unauthorized IOLTA account opened in the name of "Michael Strickland Law Group" (BBVA USA Account No. [redacted]4568/PNC Bank Account No. [redacted]4071), which the payor reported on Form 1099 as "attorney's fees" belonging to Plaintiff Kendall:

[redacted]000 *(TY2021)

DOCUMENT TYPE: 1099-MISC
PAYEE ENTITY DATA: 26-4752350
STRICKLAND AND KENDALL LAW OFFICE
2740 ZELDA RD STE 500
MONTGOMERY
STATE: AL ZIP: 36106-0000
ACCOUNT NUMBER: [redacted].054
PAYER ENTITY DATA: [redacted]0140
UNITED SERVICES AUTO ASSN
TA> C O USAA CASUALTY INSURANCE CO
9800 FREDERICKSBURG ROAD
SAN ANTONIO TX 78288
FED TAX WH............$0
ATTRNY FEE.......$47,500+

NOT DIRECT SALES
NO SECOND NOTICE
FATCA IND:NO

***Form 1099***

BBVA Deposit Ticket

| | | | |
|---|---|---|---|
| Business Date: | 02/06/21 | Trans Seq #: | 00226 |
| Calendar Date: | 02/06/21 | Account #: | 8781045568 |
| Time: | 15:33:05 | Customer Name: | |
| Region ID: | 477 | Cash In: | 0.00 |
| Cost Center: | 0000030307 | Checks: | 47500.00 |
| Cashbox: | 0004 | Cash Back: | 0.00 |
| Operator: | S108343 | Total Deposit: | 47500.00 |

[redacted]0000,/

[redacted]0307

***Deposit Slip***

43. In May 2021, BBVA Bank deposited a $75,000 check into the unauthorized IOLTA account opened in the name of "Michael Strickland Law Group" (BBVA USA Account No. [redacted]4568/PNC Bank Account No. [redacted]4071), which the payor reported on Form 1099 as "attorney's fees" belonging to Plaintiff Kendall:

[redacted]0000 *(TY2021)

DOCUMENT TYPE: 1099-MISC
PAYEE ENTITY DATA: [redacted]2350
STRICKLAND & KENDALL LLC
2740 ZELDA RD STE 500
MONTGOMERY
STATE: AL ZIP: 36106-0000
ACCOUNT NUMBER: [redacted]344
PAYER ENTITY DATA: [redacted]1019
FEDEX GROUND PACKAGE SYSTEM INC
30 FEDEX PKWY 1ST FL HORIZONTAL
COLLIERVILLE TN 38017
FED TAX WH............$0
ATTRNY FEE.......$75,000+

NOT DIRECT SALES
NO SECOND NOTICE
FATCA IND:NO

***Form 1099***

BBVA Deposit Ticket

| | | | |
|---|---|---|---|
| Business Date: | 05/11/21 | Trans Seq #: | 00049 |
| Calendar Date: | 05/11/21 | Account #: | [redacted]568 |
| Time: | 15:25:48 | Customer Name: | |
| Region ID: | 077 | Cash In: | 0.00 |
| Cost Center: | 0000030307 | Checks: | 75000.00 |
| Cashbox: | 0003 | Cash Back: | 0.00 |
| Operator: | S109099 | Total Deposit: | 75000.00 |

[redacted]0000,/

[redacted]0307

***Deposit Slip***

44. In April 2022, PNC Bank deposited a $2,250,000 settlement check into the unauthorized IOLTA Account opened in the name of "Michael Strickland Law Group" (BBVA USA Account No. [redacted]4568/PNC Bank Account No. [redacted]4071), which the payor reported on Form 1099 as "attorney's fees" belonging to Plaintiff Kendall:

[redacted]000 *(TY2022)

DOCUMENT TYPE: 1099-MISC
PAYEE ENTITY DATA: 26-4752350
STRICKLAND & KENDALL LLC
2740 ZELDA ROAD SUITE 500
MONTGOMERY
STATE: AL ZIP: 36106-0000

NOT DIRECT SALES
NO SECOND NOTICE
FATCA IND: NO

ACCOUNT NUMBER: [redacted]81T1
PAYER ENTITY DATA: [redacted]0451
HUDSON INSURANCE COMPANY
100 WILLIAM STREET
NEW YORK NY 10038

FED TAX WH............$0
ATTRNY FEE....$2,223,239+

DEPOSIT TICKET
PNC BANK
CASH
ACCOUNT NUMBER REGIONAL ID
[redacted]4 071
CHECK OR TOTAL FROM OTHER SIDE
FOR CREDIT TO THE ACCOUNT NAMED HEREON
SUB TOTAL
DATE
NAME
LESS CASH RECEIVED
CHECKING SAVINGS
CONSUMER BUSINESS
NET DEPOSIT $ 2,259,000.—
[redacted]99 10:

***Form 1099*** ***Deposit Slip***

45. That same month, PNC Bank deposited a $3,515,000 check into the unauthorized IOLTA account opened in the name of "Michael Strickland Law Group" (BBVA USA Account No.[redacted]4568/PNC Bank Account No.[redacted]4071), which the payor reported on From 1099 as "attorney's fees" belonging to Plaintiff Kendall:

[redacted]000 *(TY2023)

DOCUMENT TYPE: 1099-MISC
PAYEE ENTITY DATA: 26-4752350
STRICKLAND & KENDALL LLC
2740 ZELDA RD SUITE 500
MONTGOMERY
STATE: AL ZIP: 36106-0000

NOT DIRECT SALES
NO SECOND NOTICE
FATCA IND: NO

ACCOUNT NUMBER: [redacted]0T6
PAYER ENTITY DATA: [redacted]366
THE CINCINNATI INSURANCE COMPANY
PO BOX 145496
CINCINNATI OH 45250

FED TAX WH............$0
ATTRNY FEE....$3,500,000+

DEPOSIT TICKET
PNC BANK
CASH
ACCOUNT NUMBER REGIONAL ID
[redacted]4071
CHECK OR TOTAL FROM OTHER SIDE
FOR CREDIT TO THE ACCOUNT NAMED HEREON
SUB TOTAL
DATE 01/27/2023
NAME
LESS CASH RECEIVED
CHECKING SAVINGS
CONSUMER BUSINESS
NET DEPOSIT $ 3515,000.—
[redacted]10:

***Form 1099*** ***Deposit Slip***

46. In August 2023, PNC Bank deposited a $30,000 check into the unauthorized IOLTA account opened in the name of "Michael Strickland Law Group" (BBVA USA Account No.[redacted]4568/PNC Bank Account No.[redacted]4071), which the payor reported on Form 1099 as "attorney's fees" belonging to Plaintiff Kendall:

[redacted]000 *(TY2023)

DOCUMENT TYPE: 1099-MISC
PAYEE ENTITY DATA: 26-4752350
STRICKLAND & KENDALL LLC
2740 ZELDA ROAD SUITE 500
MONTGOMERY
STATE: AL ZIP: 36106-0000

NOT DIRECT SALES
NO SECOND NOTICE
FATCA IND:NO

ACCOUNT NUMBER: [redacted]359
PAYER ENTITY DATA: [redacted]266
SOMMERS SCHWARTZ PC
17TH FLOOR
SOUTHFIELD MI 48076

FED TAX WH............$0
ATTRNY FEE.......$30,000+

***Form 1099***

DEPOSIT TICKET
PNC BANK

ACCOUNT NUMBER [redacted]4071 REGIONAL ID

CASH
CHECKS
CHECK OR TOTAL FROM OTHER SIDE
SUB TOTAL
LESS CASH RECEIVED

FOR CREDIT TO THE ACCOUNT NAMED HEREON
DATE 08/30/2023
NAME Michael Strickland Law Group

☐ CHECKING ☐ SAVINGS
☐ CONSUMER ☐ BUSINESS

NET DEPOSIT $ 30000.—

[redacted]9101:

***Deposit Slip***

47. In June 2024, PNC Bank deposited a $39,375 check into the unauthorized IOLTA account opened in the name of "Michael Strickland Law Group" (BBVA USA Account No. [redacted]4568/PNC Bank Account No. [redacted]4071), which the payor reported on Form 1099 as "attorney's fees" belonging to Plaintiff Kendall:

[redacted]000 *(TY2024)

DOCUMENT TYPE: 1099-MISC
PAYEE ENTITY DATA: 26-4752350
STRICKLAND & KENDALL LLC
2740 ZELDA RD STE 500
MONTGOMERY
STATE: AL ZIP: 36106-0000

NOT DIRECT SALES
NO SECOND NOTICE
FATCA IND:NO

ACCOUNT NUMBER: [redacted]0589
PAYER ENTITY DATA: [redacted]4268
SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE 17TH FLOOR
SOUTHFIELD MI 48076

FED TAX WH............$0
ATTRNY FEE.......$39,375+

***Form 1099***

DEPOSIT TICKET
PNC BANK

ACCOUNT NUMBER [redacted]4071 REGIONAL ID

CASH
CHECKS
CHECK OR TOTAL FROM OTHER SIDE
SUB TOTAL
LESS CASH RECEIVED

FOR CREDIT TO THE ACCOUNT NAMED HEREON
DATE June 6, 2024
NAME Michael Strickland

☐ CHECKING ☐ SAVINGS
☐ CONSUMER ☐ BUSINESS

NET DEPOSIT $ 39375.XX

[redacted]9101:

***Deposit Slip***

48. In June 2025, PNC Bank deposited a $1,000,000 settlement check made payable to "Strickland & Kendall ITF Jasmine Jaynay Moss" into the unauthorized IOLTA account opened in the name of "Michael Strickland Law Group" (BBVA USA Account No. [redacted]4568/PNC Bank Account No. [redacted]4071).



DEPOSIT TICKET
PNC BANK

ACCOUNT NUMBER [redacted] 4071
REGIONAL ID
CASH ✓

FOR CREDIT TO THE ACCOUNT NAMED HEREON
DATE 07/03/
NAME Michael Strickland

CHECK OR TOTAL FROM OTHER SIDE
SUB TOTAL
LESS CASH RECEIVED

☐ CHECKING ☐ SAVINGS FORM162269
☐ CONSUMER ☐ BUSINESS

NET DEPOSIT $ 1,000,000.—

[redacted] 99101:



ProAssurance Indemnity Company, Inc.
100 Brookwood Place
Birmingham, AL 35209

CHECK NO: 168156
CHECK DATE: 06/17/2025

PAY One Million and 00 Cents

AMOUNT $1,000,000.00

TO THE ORDER OF: Strickland & Kendall ITF Jasmine Jaynay Moss

[redacted] 4685

Back



[redacted] 7003

[redacted] 7003

49. The endorsement of this settlement check is clearly in the handwriting of Strickland, not Jasmine Jaynay Moss, and an IOLTA account opened in the name of “Michael Strickland Law Group” should not have been able to receive these funds, regardless of the

endorsement. By depositing the entire settlement check into the unauthorized IOLTA account opened in the name of "Michael Strickland Law Group" (BBVA USA Account No. [redacted]4568/PNC Bank Account No.[redacted]4071), Strickland stole attorney's fees belonging to Plaintiff Kendall.

50. Earlier this year, Plaintiff Kendall learned that PNC Bank affected transfers from BBVA USA Account No. [redacted]8612 (which later became PNC Bank Account No.[redacted]8554), the IOLTA account Strickland opened with Plaintiff Kendall, to external accounts opened by Strickland.

51. Strickland also periodically deposited large, lump sum cash deposits into the operating account opened in the name of Strickland & Kendall, LLC (BBVA USA Account No. [redacted]7640, which would later become PNC Bank Account No.[redacted]8503). For example, on

September 2, 2022, Strickland deposited $50,000 into the account:


DEPOSIT TICKET
PNC BANK
ACCOUNT NUMBER [redacted]8503
REGIONAL ID
CASH ✓
CHECKS
CHECK OR TOTAL FROM OTHER SIDE
FOR CREDIT TO THE ACCOUNT NAMED HEREON
DATE Sept 2, 2022
NAME Michael Strickland
SUB TOTAL
LESS CASH RECEIVED
☐ CHECKING ☐ SAVINGS FORM162289
☐ CONSUMER ☐ BUSINESS
NET DEPOSIT $ 50,000.—
THIS DEPOSIT IS ACCEPTED SUBJECT TO VERIFICATION AND TO THE RULES AND REGULATIONS OF THIS BANK. DEPOSITS MAY NOT BE AVAILABLE FOR IMMEDIATE WITHDRAWAL.
[redacted]9910:
[redacted]7002
[redacted]7002

52. Large, lump sum cash deposits can signal suspicious banking activity, and such deposits by Strickland should have triggered the filing of a Currency Transaction Report and other monitoring by the Banks, as required by the Bank Secrecy Act.

53. Plaintiff Kendall further learned in November 2025 that a PNC Bank Visa Card (ending 0087) was opened in his name, with recurring charges by AT&T. The AT&T charges were for telephone service to a landline, (334) 274, 0744, which a reverse search shows is affiliated only with Strickland and his family members. Plaintiff Kendall never opened or ever knew of this account. The account was closed on November 17, 2025, by someone other than Plaintiff Kendall.

54. Plaintiff Kendall was unaware of the existence of Strickland's shadow accounts and

the banking activity conducted through them, because Strickland and his wife, Emily, intentionally concealed the accounts from Plaintiff Kendall and exercised exclusive possession, custody, and control over them. Strickland also kept concealed the transfers in and out of the firm's operating and IOLTA accounts, following Strickland's conversion of the accounts through the reclassification. None of the account statements for these accounts was ever sent to Plaintiff Kendall, because Strickland and his wife, Emily, who served as the firm's bookkeeper since its formation, directed that all account statements, correspondence, and banking records relating to the accounts be sent exclusively to the firm's Montgomery office, preventing Plaintiff Kendall—who works in the firm's Mobile office—from receiving or reviewing those records. The Stricklands further kept their fraudulent scheme hidden from Plaintiff Kendall's view by altering the firm's account statements and financial records, which were provided to Plaintiff Kendall, thereby preventing him from discovery the existence of the shadow accounts, the reclassification of the firm's operating account, and Strickland's theft of funds through the accounts, until the court ordered discovery in the proceedings for judicial dissolution of the firm.

55. It was only with the assistance of court-ordered discovery through the judicial dissolution of Strickland & Kendall, LLC, that Plaintiff Kendall uncovered the illicit transfers of funds by Strickland through PNC accounts. That discovery has not yet revealed the full scope of Strickland's fraud, and Plaintiff Kendall estimates Strickland has diverted several million dollars from him to date.

**iv. The Banks' Failure to Adhere to Industry Standards and Regulatory Requirements in Opening the Unauthorized Shadow Accounts**

56. The Banks were subject to anti-money laundering regulations, including as set forth in the PATRIOT and Bank Secrecy Acts, at all times relevant herein. As reported by BBVA USA to the Securities and Exchange Commission, those regulations require banks in the United States

"to maintain anti-money laundering programs that include established internal policies, procedures, and controls; a designated compliance officer; an ongoing employee training program; and testing of the program by an independent audit function."[4]

57. Within that framework, the anti-money laundering regulations require banks to implement standards for identification at account opening and to monitor for suspicious activity once an account is opened. These requirements are known as "Know-Your-Customer" ("KYC") or "Customer Identification Programs" ("CIPs"). At minimum, a bank must verify a customer's identity before opening an account, including by gathering public registration documents and tax identification numbers. These regulations also require that banks monitor for suspicious transactions to prevent fraud in servicing the accounts.

58. Banking industry standards are in accord. A bank must employ commercially reasonable means to verify the identity of the person or entity opening an account and to monitor transactions flowing through the account, once opened.

59. The Banks breached those standards in servicing the operating and IOLTA accounts that Strickland and Plaintiff Kendall opened together, and in opening and servicing Strickland's fraudulent shadow accounts, including by:

a. failing to require that both Strickland and Plaintiff Kendall provide their signatures in person, when Strickland unilaterally recharacterized Strickland & Kendall, LLC as a "Sole Proprietorship";

b. failing to nonetheless verify the signatures faxed to the Bank by Strickland, which Strickland forged, with the signatures on the organizational documents on file with the Banks;

c. failing to verify Strickland's characterization of Strickland & Kendall, LLC as a "Sole Proprietorship," after servicing the firm's accounts for several years and with knowledge that the firm remained a limited liability company owned

[4] https://www.sec.gov/Archives/edgar/data/1409775/000140977514000032/bbvacompassform10-12gamend.htm#sDF2F74EF505C5AE998FFA4C2B3F1A660

equally by Strickland and Plaintiff Kendall, as documented in the firm's tax returns, its organizational documents, filings with the Alabama State Bar and Secretary of State, and as indicated on the account ownership forms itself;

d. failing to check that the EIN number used by Strickland in converting ownership and control of the account was assigned to "Strickland & Kendall, LLC, which Strickland and Plaintiff Kendall used to open the account;

e. when opening Account No. [redacted]4071 (the secret, second IOLTA account) in the name of "Michael Strickland Law Group", failing to verify the existence of "Michael Strickland Law Group" through organizational documents and/or tax filings;

f. when servicing these accounts, failing to implement controls and other procedures to verify that deposits into and withdrawals from these accounts were by and for the owners or beneficiaries of the accounts; and

g. allowing Strickland to open a credit card account in Plaintiff Kendall's name without Plaintiff Kendall's knowledge or consent.

60. These and other failures by the Banks facilitated Strickland's theft of attorney's fees and other funds belonging to Plaintiff Kendall.

## CAUSES OF ACTION

### Negligence

61. Plaintiff Kendall incorporates the preceding paragraphs as if set forth fully herein.

62. Defendant PNC Bank and its predecessor-in-interest, BBVA USA, owed a duty of care to Plaintiff Kendall to act with the standard of care in the banking industry and in accordance with banking regulations.

63. Defendant PNC Bank and its predecessor-in-interest, BBVA USA, breached the duty owed to Plaintiff Kendall by failing to implement adequate customer identification procedures other diligence required by industry standards, as referenced herein, including but not limited to:

a. failing to require that both Strickland and Plaintiff Kendall provide their signatures in person, when Strickland unilaterally recharacterized Strickland & Kendall, LLC as a “Sole Proprietorship”;

b. failing to nonetheless verify the signatures faxed to the Bank by Strickland, which Strickland forged, with the signatures on the organizational documents on file with the Banks;

c. failing to verify Strickland’s characterization of Strickland & Kendall, LLC as a “Sole Proprietorship,” after servicing the firm’s accounts for several years and with knowledge that the firm remained a limited liability company owned equally by Strickland and Plaintiff Kendall, as documented in the firm’s tax returns, its organizational documents, filings with the Alabama State Bar and Secretary of State, and as indicated on the account ownership forms itself;

d. failing to check that the EIN number used by Strickland in converting ownership and control of the account was assigned to “Strickland & Kendall, LLC, which Strickland and Plaintiff Kendall used to open the account;

e. when opening Account No. [redacted]4071 (the secret, second IOLTA account) in the name of “Michael Strickland Law Group”, failing to verify the existence of “Michael Strickland Law Group” through organizational documents and/or tax filings;

f. when servicing these accounts, failing to implement controls and other procedures to verify that deposits into and withdrawals from these accounts were by and for the owners or beneficiaries of the accounts; and

g. allowing Strickland to open a credit card account in Plaintiff Kendall’s name without Plaintiff Kendall’s knowledge or consent.

64. The Banks’ breaches proximately caused substantial losses to Plaintiff Kendall, as the negligence by Defendant PNC Bank and its predecessor-in-interest BBVA USA allowed Strickland to steal hard-earned attorney’s fees from Plaintiff Kendall through the shadow accounts.

**Wantonness**

65. Plaintiff Kendall incorporates the preceding paragraphs as if set forth fully herein.

66. Defendant PNC Bank and its predecessor-in-interest, BBVA USA, owed a duty of care to Plaintiff Kendall to act with the standard of care in the banking industry and in accordance with banking regulations.

67. Defendant PNC Bank and its predecessor-in-interest, BBVA USA, breached the duty owed to Plaintiff Kendall by failing to implement adequate customer identification procedures other diligence required by industry standards, as referenced herein, including but not limited to:

a. failing to require that both Strickland and Plaintiff Kendall provide their signatures in person, when Strickland unilaterally recharacterized Strickland & Kendall, LLC as a "Sole Proprietorship";

b. failing to nonetheless verify the signatures faxed to the Bank by Strickland, which Strickland forged, with the signatures on the organizational documents on file with the Banks;

c. failing to verify Strickland's characterization of Strickland & Kendall, LLC as a "Sole Proprietorship," after servicing the firm's accounts for several years and with knowledge that the firm remained a limited liability company owned equally by Strickland and Plaintiff Kendall, as documented in the firm's tax returns, its organizational documents, filings with the Alabama State Bar and Secretary of State, and as indicated on the account ownership forms itself;

d. failing to check that the EIN number used by Strickland in converting ownership and control of the account was assigned to "Strickland & Kendall, LLC, which Strickland and Plaintiff Kendall used to open the account;

e. when opening Account No. [redacted]4071 (the secret, second IOLTA account) in the name of "Michael Strickland Law Group", failing to verify the existence of "Michael Strickland Law Group" through organizational documents and/or tax filings;

f. when servicing these accounts, failing to implement controls and other procedures to verify that deposits into and withdrawals from these accounts were by and for the owners or beneficiaries of the accounts; and

g. allowing Strickland to open a credit card account in Plaintiff Kendall's name without Plaintiff Kendall's knowledge or consent.

68. The Banks consciously engaged in the acts or omissions constitute the breaches identified in Paragraph 65, with knowledge that its failure to implement adequate customer identification procedures other diligence required by industry standards created a danger for theft of Plaintiff Kendall's funds and identity, and that such injuries would likely or probably result.

69. The Banks' breaches proximately caused substantial losses to Plaintiff Kendall, as the negligence by Defendant PNC Bank and its predecessor-in-interest BBVA USA allowed Strickland to steal hard-earned attorney's fees from Plaintiff Kendall through the shadow accounts.

## JURY DEMAND

Plaintiff Kendall demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kendall prays for judgment in his favor and against Defendant PNC Bank, N.A., for compensatory damages, punitive damages, attorney's fees, and for all such other relief as this Court deems fair and just.

Respectfully submitted,

/s/***L. Landis Sexton***
L. Landis Sexton, Ala. Bar No. 5057N71L
**LANDIS SEXTON, LLC**
3116 Southview Avenue
Montgomery, Alabama 36106
P.O. Box 6148
Tel. 334-929-7225
LLS@birdsong-sexton.com

Kerry J. Miller, La. Bar. No. 24562
(*Motion to Appear Pro Hac Vice to be Filed*)
Rebekka C. Veith, La. Bar No. 36062
(*Motion to Appear Pro Hac Vice to be Filed*)
C. Hogan Paschal, La. Bar No. 38495
(*Motion to Appear Pro Hac Vice to be Filed*)
**MILLER, THIBODEAUX,**
**DYSART, VEITH & PASCHAL, LLC**
643 Magazine Street, Suite 405
New Orleans, Louisiana 70130
Tel: 504-977-9158
Fax: 504-977-9151
kmiller@mtdvp.com
hpaschal@mtdvp.com

**Counsel to Plaintiff Kendall**